UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

ANDRE DUNCAN and JALLOH A. SAMUSI,

                             Plaintiffs,

                    -against-

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF
ANTHONY J. LAROCCO, in his individual and official
capacities, CORRECTIONS OFFICER VENTURE #4777,
in his individual and official capacities, and
CORRECTIONS OFFICER JOHN DOES #1-10
(fictitiously named), in their individual and official
capacities,

                             Defendants.

------------------------------------------------------------------------- X

**DOCKET NO.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs ANDRE DUNCAN and JALLOH A. SAMUSI, by their attorneys, HORN WRIGHT, LLP, complaining of Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, CORRECTIONS OFFICER VENTURE #4777, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, allege as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      This is a civil rights action in which Plaintiffs ANDRE DUNCAN ("DUNCAN") and JALLOH SAMUSI ("SAMUSI") (collectively, referred to as "Plaintiffs") seek relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, CORRECTIONS OFFICER VENTURE #4777, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities for committing acts under color of

law and depriving Plaintiffs of rights secured under 42 U.S.C. § 1983 grounded in rights secured to them under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and laws of the State of New York.

2. Plaintiffs allege that Defendants engaged in unlawful conduct. Specifically, during the course of Plaintiffs' pre-trial detention at the Nassau County Correctional Center, Plaintiffs were subjected to harassment, assault, battery, and use of excessive force without cause, causing physical harm and extreme pain and suffering in violation of Plaintiffs' Constitutional rights and New York State laws.

3. Defendants CORRECTIONS OFFICER VENTURE #4777 and CORRECTIONS OFFICER JOHN DOES #1-10, without justification or any reason except for an intent to deprive Plaintiffs of their rights and knowledge that their conduct had the tacit authorization of COUNTY OF NASSAU, assaulted and battered Plaintiff. Said use of unjustified force on Plaintiffs deprived them of their civil and Constitutional rights.

4. Plaintiffs seek damages, both compensatory and punitive, award of costs, disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

**JURISDICTION**

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

## VENUE

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiffs' claims occurred within the County of Nassau; the actual place of employment of the individually named Defendants and Doe Officers is within the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York. The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York. Additionally, Plaintiffs reside within the County of Nassau in the Eastern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Plaintiffs attempted to fulfill the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), requiring inmates to exhaust available, administrative remedies prior to filing suit under 42 U.S.C. § 1983 alleging violations of their Constitutional rights but were denied access to the process and/or prevented from filing such.

## THE PARTIES

8.      Plaintiff ANDRE DUNCAN ("DUNCAN") is a resident of the United States who lives within the Eastern District of New York.

9.      Plaintiff JALLOH SAMUSI ("SAMUSI") is a resident of the United States who lives within the Eastern District of New York.

10.      Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

11.      At all relevant times herein, NASSAU COUTNY SHERIFF ANTHONY J. LaROCCO ("LaROCCO") was and is the Sheriff of the County of Nassau, acting under color of

state law, and is responsible for providing a safe and secure environment for detainees in his custody.

12. Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER VENTURE #4777 ("VENTURE") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, VENTURE was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in the Nassau County Sheriff's Department and Nassau County Correctional Center.

13. Defendant, CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES #1-10") are members of the Nassau County Sheriff's Department who are being sued in their individual and official capacities, are employed by Defendant COUNTY and the Nassau County Sheriff's Department and were Corrections Officers or Supervisors employed by Defendant COUNTY and the Nassau County Sheriff's Department, and work under the supervision, direction, and/or control of their supervisors in the Nassau County Sheriff's Department and Nassau County Correctional Center. Upon information and belief, at all relevant times described herein, DOES were acting under color of state law within the scope of their employment as members of the Nassau County Sheriff's Department and employed by Defendant COUNTY and the Nassau County Sheriff's Department. Plaintiff does not know the real names and shield numbers of DOES.

4

**RELEVANT NON-PARTIES**

14.     Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, operated, maintained, and controlled the Nassau County Sheriff's Department ("NCSD"), including the Nassau County Correctional Center and all Correction Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody. NCSD is an administrative arm of Defendant COUNTY.

15.     Upon information and belief, at all relevant times described herein, NCSD, by its agents and/or employees, operated, maintained, and controlled the Nassau County Correctional Center ("NCCC") and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody. NCCC is an administrative arm of Defendant COUNTY.

**FACTUAL ALLEGATIONS**

16.     On or about August 23, 2022, Plaintiff DUNCAN was lodged at NCCC as a pre-trial detainee under the care and custody of Defendants.

17.     On or about August 23, 2022, Plaintiff SAMUSI was lodged at NCCC as a pre-trial detainee under the care and custody of Defendants

18.     The NCCC is located at 100 Carman Avenue, East Meadow, New York, on information, is an agency, subdivision, and/or instrumentality of COUNTY.

19.     On or about August 23, 2022, Plaintiffs were being transported to Court by the NCCC transport unit. Defendants VENTURE and/or DOES #1-10 were operating the transport bus. Plaintiffs, along with others, were seated, handcuffed, and shackled. Plaintiffs were not seatbelted and/or otherwise restrained within their seats for their own safety.

20.    The transport bus was travelling west-bound on Old Country Road, Mineola, New York. As the transport bus neared Washington Avenue, Garden City/Roslyn Road, Mineola, New York. VENTURE and/or DOES #1-10 moved into the turning lane.

21.    As the transport bus proceeded to travel forward in the turning lane, the transport bus violently came to a stop. Upon information, VENTURE and/or DOES #1-10 struck a vehicle that was in front of the transport bus.

22.    As the transport bus came to a violent stop, Plaintiffs were caused to be violently thrust forward.

23.    Upon information and belief, the foregoing incident required the preparation and submission of an accident report to the Nassau County Sheriff's Department and the County of Nassau.

24.    Upon information and belief, the foregoing incident required the preparation and submission of an MV-104 accident report to the New York State Department of Motor Vehicles within ten (10) days of the date of the incident; but no such accident report was prepared or filed by any of the Defendants with respect to the foregoing collision.

25.    Subsequent to the foregoing collision and with the intent to further cause injury to Plaintiffs, the individual Defendants on scene refused to render any assistance to Plaintiffs.

26.    Upon information and belief, Defendants were completely aware that Plaintiffs were severely injured but, rather than taking Plaintiffs directly to an emergency room, they chose to ignore Plaintiffs' pleas for medical assistance and instead brought them to the holding cells in the Court.

27.    Upon returning to NCCC, Defendants continued to refuse to provide medical assistance to Plaintiffs.

28.    Upon information and belief, Defendants refused to write an incident report and/or accident report in connection with the incident.

29.    By reason of the foregoing, Plaintiffs endured extreme pain, suffered severe injuries, were scarred, and otherwise severely harmed physically and emotionally.

30.    Plaintiffs' request for medical attention were ignored and, despite it being apparent that Plaintiffs had suffered serious physical injuries as a result of the actions of Defendants, Plaintiffs were denied medical attention by Defendants.

31.    Defendants have a duty to provide competent medical and custodial care to their pre-trial detainees.

32.    At all relevant times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiffs and, while these acts were carried out under color of law, Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper, and unrelated to any activity in which Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, and property, or ensure civil order.

33.    At all relevant times mentioned in this Complaint, Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of Plaintiffs; each of the Defendants failed and/or refused to perform that duty and failed and/or refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiffs.

34.    That the injuries Plaintiffs suffered were caused solely by the conduct of Defendants and Plaintiffs in no way contributed to or caused the injuries they suffered.

35.    The conduct of Defendants was the proximate cause of Plaintiffs' injuries.

36.    The injuries suffered by Plaintiffs are permanent in nature.

**COUNT I**
**VIOLATION OF PLAINTIFFS' FOURTH, FIFTH, EIGHTH, AND FOURTEENTH**
**AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S**
**RIGHTS/VIOLATING PLAINTIFFS' BODILY INTEGRITY (§ 1983)**
**(*Against Defendants VENTURE and DOES #1-10*)**

39.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

40.    The harm to Plaintiffs was foreseeable and a direct result of VENTURE and/or DOES 1-10's conduct.

41.    VENTURE and/or DOES #1-10 acted in conscious disregard of a great risk of serious harm to Plaintiffs, placing Plaintiffs in substantial fear for their lives and safety, and causing physical and emotional injuries to Plaintiffs.

42.    VENTURE and/or DOES #1-10's conduct was intentional, with deliberate indifference, recklessness, and/or gross negligence.

43.    VENTURE and/or DOES #1-10 consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiffs in a dangerous situation under color of state law that they otherwise would not have been subjected to but for Defendants' conduct.

44.    VENTURE and/or DOES #1-10 were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiffs.

45.    VENTURE and/or DOES #1-10 used their authority to create an opportunity that otherwise would not have existed for harm to occur.

46. VENTURE and/or DOES #1-10's conduct constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

47. VENTURE and/or DOES #1-10 acted intentionally, with wanton or deliberate indifference, recklessness, and/or gross negligence to Plaintiffs' rights.

48. The aforesaid actions of VENTURE and/or DOES #1-10 constituted a gross violation of Plaintiffs' bodily integrity for no legitimate reason in violation of Plaintiffs' substantive due process rights guaranteed by the Fifth and Fourteenth Amendments.

49. As a result of VENTURE and/or DOES #1-10's willing, wanton, reckless, deliberately indifferent, and grossly negligent conduct, Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights were violated and they were unlawfully subjected to a dangerous situation directly caused by Defendants' affirmative actions.

50. As a proximate result of VENTURE and/or DOES #1-10's intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiffs were caused to sustain physical injuries, placed in substantial fear for their lives, sustained mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, have suffered great mental anguish, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiffs' damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

<u>**COUNT II**</u>
<u>**VIOLATION OF PLAINTIFFS' FOURTH, FIFTH, EIGHTH, AND FOURTEENTH**</u>
<u>**AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)**</u>
<u>**(*Against All Defendants*)**</u>

51.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

52.    Defendants knew that there was a strong likelihood of harm to Plaintiffs but failed to take reasonable measures to intervene and prevent the unlawful conduct of VENTURE and/or DOES #1-10, despite having an opportunity to do so.

53.    Upon information and belief, Defendants were on notice of VENTURE and/or DOES #1-10 propensity to use their status as Corrections Officers to unlawfully inflict harm on the inmates.

54.    Defendants knew that VENTURE and/or DOES #1-10 had engaged in this conduct in the past using the actual and/or apparent authority of the NCSD and NCCC to carry out their unlawful conduct.

55.    Upon information and belief, Defendants were on notice of VENTURE and/or DOES #1-10's propensity to use their status as Corrections Officers to further their unlawful conduct.

56.    Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter VENTURE and/or DOES #1-10 and/or other Corrections Officers from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

10

57.    Had Defendants intervened to stop the unlawful conduct of VENTURE and/or DOES #1-10 before August 23, 2022, Plaintiffs would not have been subjected to the events described herein.

58.    As a result of Defendants' failure to protect and failure to intervene, Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights were violated.

59.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiffs were caused to sustain physical injuries, placed in substantial fear for their lives, sustained mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, have suffered great mental anguish, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiffs' damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## COUNT III
## FAILURE TO SUPERVISE AND FAILURE TO TRAIN (§ 1983)
### (*Against Defendants COUNTY and LaROCCO*)

60.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

61.    The unlawful conduct perpetrated against vulnerable inmates by the Corrections officers, including VENTURE and/or DOES #1-10, is and was foreseeable.

62.    Defendants COUNTY and LaROCCO were responsible for supervising, overseeing, and controlling their subordinates in the NCSD and NCCC, including VENTURE and/or DOES #1-10.

63. Defendants COUNTY and LaROCCO had an express and/or implied duty to provide a reasonably safe environment for their inmates, including Plaintiffs. At a minimum, they had a duty to keep them from being unlawfully harmed and/or injured by their employees, including VENTURE and/or DOES #1-10, which was foreseeable based upon their past instances of misconduct, which were known to the senior officers and supervisors in the NCSD and NCCC.

64. In fact, it was well known throughout the community that multiple Corrections Officers, including VENTURE and/or DOES #1-10, were using their actual and/or apparent authority to cause injuries to vulnerable inmates without reason and without any legal basis and denying them medical attention.

65. Despite having this knowledge, Defendants COUNTY and LaROCCO failed to take any remedial measures to prevent foreseeable acts of abuse by Corrections Officers.

66. The countenancing of this behavior created an environment within the NCSD and NCCC wherein Corrections Officers were allowed to continue with their behavior, which led to the Constitutional rights of vulnerable citizens being violated for their desires, including Plaintiffs.

67. Defendants COUNTY and LaROCCO, intentionally failed to adequately supervise, control, oversee, train, and/or monitor VENTURE and/or DOES #1-10, who had a history of engaging in official misconduct, and failed to implement measures to prevent VENTURE and/or DOES #1-10 and other Corrections Officers from conspiring with each other to cover up their official misconduct.

68. Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor VENTURE and/or DOES #1-10 and other Corrections Officers from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual inmates, including Plaintiffs.

12

69.    Defendants COUNTY and LaROCCO negligently hired, retained, and/or supervised VENTURE and/or DOES #1-10 when they knew or should have known that they posed a threat of abuse to vulnerable inmates.

70.    Defendants COUNTY and LaROCCO knew or should have known of VENTURE and/or DOES #1-10's violent propensities for the conduct which caused Plaintiffs' injuries, prior to the occurrence of the injuries, given the knowledge of other instances of abuse that predate August 23, 2022.

71.    Defendants COUNTY and LaROCCO owed a duty of care to all persons, including Plaintiffs, who were likely to come into the influence of VENTURE and/or DOES #1-10, in their roles as Corrections Officers, to ensure that VENTURE and/or DOES #1-10 did not abuse their authority as Corrections Officers to injure inmates through their unlawful conduct and/or otherwise subjecting them to abuse for no lawful reason.

72.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

73.    Upon information and belief, Defendants COUNTY and LaROCCO were aware that there was a substantial likelihood that permitting VENTURE and/or DOES #1-10 to carry on their regular duties as Corrections Officers would deprive the inmates of their civil rights, but failed to take adequate measures to resolve the wrong.

74.    In fact, upon hearing of the allegations, Defendants COUNTY and LaROCCO still failed to take any action and failed to terminate VENTURE and/or DOES #1-10's employment or title as Corrections Officers, essentially countenancing this behavior throughout NCCC.

75.    COUNTY and LaROCCO's, and other NCSD and NCCC supervisors', failure and refusal to adequately investigate VENTURE and/or DOES #1-10 actions, acquiescence in

13

VENTURE and/or DOES #1-10's conduct, failure to take any remedial action against VENTURE and/or DOES #1-10, allowing VENTURE and/or DOES #1-10 to remain employed as Officers with COUNTY, gross negligence in their supervision of VENTURE and/or DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by VENTURE and/or DOES #1-10 and other Corrections Officers, subjects them to supervisory liability for the June 9, 2021 incident.

76.     As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiffs were caused to sustain physical injuries, placed in substantial fear for their lives, sustained mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, have suffered great mental anguish, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiffs' damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### COUNT IV
### DENIAL AND FAILURE TO PROVIDE MEDICAL TREATMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS
### (*Against All Defendants*)

77.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

78.     Defendants had an affirmative duty to provide and administer health and medical services to Plaintiffs and other NCCC pre-trial detainees.

79.     Defendants, as previously alleged, had a duty and obligation to provide Plaintiffs and other pre-trial detainees of the NCCC reasonable and adequate health and medical services.

14

80.     Defendants, on information, had knowledge that the health care they provided and/or were responsible for providing to Plaintiffs and other pre-trial detainees of the NCCC were deficient, inadequate, and incompetent.

81.     On information, the health and medical care provided by Defendants, or which they were responsible for providing, to Plaintiffs failed to meet an acceptable standard of treatment and care in terms of modern medicine, technology, and current beliefs about human decency.

82.     On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiffs, and the harm to which Plaintiffs were exposed was sufficiently serious as to implicate their Constitutional rights.

83.     On information, Defendants knew that Plaintiffs' medical condition constituted a serious need for competent and adequate medical care and treatment.

84.     On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiffs' health.

85.     The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, or death was likely.

86.     Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiffs.

87.     Defendants were deliberately indifferent to the serious medical needs of Plaintiffs.

88.     As a direct and proximate result of the foregoing, Plaintiffs were subjected to great physical and emotional pain and suffering.

89.     Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiffs.

90. As a direct and proximate result of the foregoing, Plaintiffs were subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

91. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiffs were caused to sustain severe physical injuries, placed in substantial fear for their life, sustained mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to their reputation, other special damages, have suffered great mental anguish, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiffs' damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT V**
**MONELL**
**(*Against Defendants COUNTY and LaROCCO*)**

92. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

93. Upon information and belief, it was the custom, policy, and practice of COUNTY and LaROCCO to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiffs above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Corrections Officers.

94. Employees of COUNTY and LaROCCO, such as VENTURE and/or DOES #1-10 in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct

16

would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

95.    Employees of COUNTY and LaROCCO, such as VENTURE and/or DOES #1-10 in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

96.    By failing to supervise, train, and reprimand such Corrections Officers, COUNTY and LaROCCO caused the injuries to Plaintiffs through the actions and inactions of the VENTURE and/or DOES #1-10.

97.    By maintaining a *de facto* policy of automatic indemnification, COUNTY and LaROCCO caused the injuries to Plaintiffs through the actions and inactions of the VENTURE and/or DOES #1-10.

98.    Upon information and belief, it was the custom, policy, and practice of COUNTY and LaROCCO to blatantly ignore complaints and/or widespread allegations of misconduct and/or other malfeasance against inmates by the Corrections Officers in order to shield the COUNTY, LaROCCO, NCSD, and NCCC from receiving any bad press that would be generated from an investigation of misconduct by the Corrections Officers.

99.    Upon information and belief, this custom, policy, and practice of COUNTY and LaROCCO to ignore complaints and/or widespread allegations of misconduct and other malfeasance against inmates by the Corrections Officers, created an environment where foreseeable Constitutional violations by the Corrections Officers were rampant, including the violations of Plaintiffs' Constitutional rights by VENTURE and/or DOES #1-10.

100.    COUNTY and LaROCCO's failure to take action against VENTURE and/or DOES #1-10 involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

101.    As authorized representatives of Defendants COUNTY and LaROCCO, the Corrections Officers' conduct and refusal to provide medical assistance, such as against Plaintiffs, constituted a custom, policy, and practice which renders Defendants COUNTY and LaROCCO liable to Plaintiffs as a "Person" acting under the color of state law.

102.    These customs, policies, and practices, which were enforced by Defendants COUNTY and LaROCCO were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiffs' injuries.

103.    Had COUNTY and/or LaROCCO investigated serious complaints of unlawful conduct by NCCC personnel prior to August 23, 2022, VENTURE and/or DOES #1-10 would not have been in a position to violate Plaintiffs' Constitutional rights.

104.    COUNTY and LaROCCO are therefore liable for violations of Plaintiffs' Constitutional rights as caused by VENTURE and/or DOES #1-10, as described in more detail in the foregoing paragraphs; and Plaintiffs have suffered damages therefrom.

105.    That, by virtue of COUNTY and LaROCCO's, and other NCCC Supervisors', failure and refusal to adequately investigate VENTURE and/or DOES #1-10's actions, acquiescence in VENTURE and/or DOES #1-10's conduct, failure to take any remedial action against VENTURE and/or DOES #1-10, allowing VENTURE and/or DOES #1-10 to remain employed as an officer with the jail, gross negligence in their supervision of VENTURE and/or DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by VENTURE and/or DOES #1-10, Defendants

18

COUNTY and LaROCCO, which employed these Corrections Officers and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

125.   As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiffs were caused to sustain severe physical injuries, placed in substantial fear for their life, sustained mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to their reputation, other special damages, have suffered great mental anguish, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiffs' damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

## JURY DEMAND

126.   Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ANDRE DUNCAN and JALLOH A. SAMUSI respectfully request judgment against Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, CORRECTIONS OFFICE VENTURE #4777, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, as follows:

A.   Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

19

B.      Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C.      Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D.      Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

E.      Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

F.      Costs and disbursements of this action; and

G.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       August 11, 2025

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiffs*

By:      */s/Pablo A. Fernandez*
         Pablo A. Fernandez
         400 Garden City Plaza, Suite 500
         Garden City, New York 11530
         Tel: 516.355.9696
         pfernandez@rfriedmanlaw.com

20